Filed 10/9/13  P. v. Roosevelt CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANTWAIN ARNETTE ROOSEVELT,<br><br>    Defendant and Appellant. | G047836<br><br>(Super. Ct. No. 12WF1299)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Affirmed as modified.

Julie Sullwold, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*        \*        \*

Defendant Antwain Arnette Roosevelt filed a notice of appeal after a jury convicted him of four counts of second degree commercial burglary (Pen. Code, § 459-460; all statutory references are to the Penal Code unless otherwise modified) and the trial court found two prior prison term allegations to be true (§ 667.5, subd. (b)).  His appointed counsel filed a brief summarizing the case, but advised this court she found no issues to support an appeal.  At our invitation, Roosevelt filed a written brief on his own behalf.  After considering his brief and conducting an independent review of the record under *People v. Wende* (1979) 25 Cal.3d 436, we affirm the judgment as modified.

FACTS

On April 25, 2012, around 6:30 p.m., a surveillance video showed Roosevelt walking into the restricted employee-only area at the rear of an Albertson's grocery store in Fountain Valley.  He reached into a locked, chain-link liquor cage and removed two bottles, placed them in his pants and returned to the store.  He then bought a soda before departing.  Ryan Painter, Albertson's loss prevention employee, later determined six bottles of Martini & Rossi, worth approximately $90, were missing.

A few hours later, a video camera showed Roosevelt entering a Costa Mesa Albertson's store.  Roosevelt again walked to the liquor cage area.  An employee told him to leave, but he returned a few minutes later.  He hid for a time, and then approached the cage.  The next morning, Enrique Avila, the liquor supervisor, noticed empty boxes of expensive liquor outside the cage.  Avila inventoried the liquor and determined five bottles, valued at $557, were missing.

On April 29, 2012, around 9:00 p.m., Gilbert Sandoval, a loss prevention employee at a Huntington Beach Albertson's store spotted Roosevelt in the employee-only back room receiving area.  When Sandoval directed another employee to notify the police, Roosevelt left the store.  Surveillance video showed Roosevelt in the liquor aisle "fiddling with" the locked case that "contained [] high-end liquor."  Roosevelt removed

two bottles, each valued at $54, and placed them outside the locked case before walking to the employee-only area.

About 20 minutes later, surveillance video showed Roosevelt in the liquor aisle at the Fountain Valley Albertson's store. Painter later ascertained a bottle of Hennessy XO, worth about $180, was missing.

On May 24, 2012, Seal Beach Detective Gary Krogman interviewed Roosevelt, who admitted he was the person depicted in Albertson's surveillance videos. Krogman did not ask Roosevelt specifically about any of the thefts, but Roosevelt conceded he "may" have stolen things in the past and suggested he was intoxicated during the incidents. Roosevelt wore baggie shorts with many pockets and explained "when he went into stores to steal, he would stick [the items] in his pockets." Roosevelt also stated he used to work at Albertson's and it was impossible to reach into a liquor cage and remove alcohol.

A jury convicted Roosevelt of the four charged burglary offenses. Roosevelt waived a jury on the two prior prison term allegations (§ 667.5, subd. (b)), and the trial court found them to be true. At the sentencing hearing in December 2012, the trial court found probation was not appropriate and imposed the upper three-year term for one of the burglary counts, finding factors in aggravation outweighed those in mitigation. The court added consecutive eight-month terms for the remaining three burglaries, and two consecutive one-year terms for the prison term enhancements, for a total sentence of seven years. The trial court suspended one year of the sentence as a split sentence so Roosevelt could attend a drug program. The trial court credited Roosevelt with 109 days of actual custody, and 109 days of conduct credit, and imposed various fines, fees, and assessments, including a $4,800 restitution fine. (§ 1202.4, subd. (b)(2).) The trial court also ordered him to pay Albertson's $2,200 in restitution, and recommended Roosevelt "not be subject to any alternative release program, work release, county parole, county probation during the time of his incarceration."

POTENTIAL ISSUES

Roosevelt's appellate lawyer identifies the following potential issues for our consideration:  (1) whether the trial court accurately calculated Roosevelt's custody credits;  (2) whether the court erred in denying Roosevelt's *Marsden* motions; (3) whether the court erred in denying Roosevelt's *Faretta* motion; (4) whether the court erred in failing to refer Roosevelt to the California Rehabilitation Center; (5) whether the court erred in partially denying Roosevelt's motion for return of property; (6) whether the prosecutor committed misconduct in arguing the defense could have played the audiotape of the interview between Krogman and Roosevelt; (7) whether the court erred in ordering $2,200 in restitution to Albertson's; and (8) under the new sentencing law, whether Roosevelt was entitled to work release, home confinement, a split sentence or other relief.

Roosevelt has personally submitted supplemental briefs filed September 3, 2013 and September 18, 2013.  In the September 3 brief, he contends: (1) the trial court "left out a couple of details" when instructing the jury concerning burglary; (2) his current confinement in a 22-hour lockdown facility at the Orange County Central Jail violated his right to attend various programs; (3) the trial court abused its discretion by imposing the maximum sentence on every count, running his sentence consecutively, and depriving him of work release programs, split sentencing, and home confinement; (4) the court erred when it failed to place him in the Delancey Street drug program for the remainder of his custody time; (5) the court failed to act impartially by allowing the prosecutor to commit misconduct by whispering in witness Sandoval's ear and influencing his testimony; (6) the jury was not impartial because one of the jurors worked for Albertson's or for a company that represents union members who worked for the store; (7) trial counsel rendered ineffective assistance by failing to (a) adequately investigate the case and interview key alibi witnesses and victims, (b) request a lineup, (c) "object to a lesser charge," and (d) investigate or present a mental state defense based on voluntary intoxication.  He complains trial counsel's body language displayed "racial

4

prejudice, bias, and unprofessional[ism]" and counsel failed to object to the prosecutor's misconduct with Sandoval. Roosevelt also argues (8) the trial judge displayed disrespect, "racial prejudice [and] bias" toward Roosevelt, his children and family; (9) the trial court coached the prosecutor on how to obtain a conviction and word things for the jury; (10) he was deprived of his "rights to know what" he was "actually charge[d] with;" (11) the identification evidence was flawed and there is insufficient evidence to sustain the convictions; and (12) Officer Krogman lied when he testified Roosevelt admitted he was depicted in the photos and worked for Albertson's.

In the September 18 brief, he complains of prosecutorial misconduct during closing argument and racial profiling. He also complains a car search violated his Fourth Amendment rights.

*Custody Credits*

According to the court's minutes, the police arrested Roosevelt May 24, 2012. Roosevelt posted bail on July 3, 2012. On July 26, defense counsel advised the court Roosevelt was in custody outside of Orange County. The court exonerated the bond, set bail at $100,000, and issued a bench warrant. The sheriff served the warrant on September 24. Roosevelt posted bail again on November 5, 2012. The trial court remanded Roosevelt into custody after the verdict on November 21, 2012, and the court sentenced him on December 21, 2012. It appears from our review of the minutes that Roosevelt spent 115 days in actual custody between his arrest on the current charges and sentencing, and is entitled to an additional six days of custody credit and another six days of conduct credit. We modify the judgment accordingly.

*Marsden*

On October 26, 2012, the court (Judge King) conducted a hearing per *People v. Marsden* (1970) 2 Cal.3d 118. The court entertained Roosevelt's concerns

5

about appointed trial counsel.  Counsel addressed her background and experience, explained her efforts on Roosevelt's behalf, and responded to his specific grievances. We discern no arguable issue concerning the court's denial of his motion to discharge appointed counsel.  On November 19, 2012, the trial court (Judge Prickett) conducted two additional *Marsden* hearings.  We have reviewed the transcripts of those hearings. Again, we discern no arguable issue concerning the court's denial of these motions to discharge appointed counsel.

*Faretta*

On November 19, 2012, the first day of trial, the court also addressed whether Roosevelt desired to represent himself.  (*Faretta v. California* (1975) 422 U.S. 806.)  The record reflects Roosevelt equivocated on whether he wanted to represent himself, and requested more time to prepare.  The court refused to grant him a continuance, and denied his *Faretta* request without prejudice as untimely.  No arguable issue exists concerning the court's denial of Roosevelt's request for self-representation.

*California Rehabilitation Center*

No arguable issue exists on whether the court should have referred Roosevelt to the California Rehabilitation Center.  (See Welf. & Inst. Code, § 3051, subd. (d) ["Commencing July 1, 2012, no new commitments may be made pursuant to this section"].)

*Motion for Return of Property*

The clerk's transcript contains a written order reflecting the court ordered authorization to return to Roosevelt three cartons of cigarettes and a 20-ounce container of orange soda.  The court denied return of 19 bottles of various brands of liquor.  (See *Gershenhorn v. Superior Court* (1964) 227 Cal.App.2d 361, 364-365 [defendant may

6

bring a motion for return of property seized that was not introduced into evidence but remained in possession of the seizing officer]; § 1407 et seq. [police may hold allegedly stolen property pending satisfactory proof of ownership and reasonable notice and opportunity to be heard].)

The reporter's transcript reflects that after sentencing Roosevelt, the court stated "[t]here is a request for the return of property. The court will grant it as to items 1 and 2, will deny it as to items 3 through 21." The court's minutes reflect the order was signed and filed after rendition of judgment. Roosevelt's notice of appeal does not separately address this order. In any event, our record contains no motion, opposition, or discussion concerning the motion to return the alcohol at issue, nor an objection to the order. We conclude the record is inadequate to demonstrate an arguable issue on appeal.

*Prosecutor's Argument Concerning Audiotape of Defendant's Police Interview*

Defense counsel stated during closing argument that it was difficult to verify Detective Krogman's claim Roosevelt was evasive during their interview because "you can't listen to the interview even though it's recorded. So we're sort of going off of what the officer's rendition of it was." Counsel also stated "since we're not there in that interrogation room, we don't know how this went down. It's just this officer saying this . . . ."

During rebuttal argument, the prosecutor stated, "There is an audiotape recording of that. Don't you think just reasonably that [the] . . . defense would have played that for you? You know, the law says I don't have to play every single piece of evidence. . . . [¶] If that was the case [that playing it was not waste of time], wouldn't you have heard it from [defense counsel]? Wouldn't she have played portions of the tape . . . that says hey, listen to you, don't you feel you're forcing an answer out of him? . . . Why? Because this is exactly what you're picturing in your mind, the exact picture

painted to you by Detective Krogman, an individual who was caught red handed like a rat in a trap scurrying to say everything and anything he could to get out of trouble."

A prosecutor may comment on the state of the evidence or on the defendant's failure to call logical witnesses, introduce material evidence, or rebut the prosecution's case. (*People v. Medina* (1995) 11 Cal.4th 694, 755; cf. *People v. Bradford* (1997) 15 Cal.4th 1229, 1340 [prosecutor may not suggest that "a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence"].) We discern no arguable issue concerning the prosecutor's rebuttal argument.

*Victim Restitution*

The probation report states, "Kim Sempson [Albertson's regional loss prevention supervisor] indicated Albertsons sustained more than $2,200 in financial losses as a result of the defendant's actions." Section 1202.4 provides, "(a)(1) It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime, " and "(3) The court, in addition to any other penalty provided or imposed under the law, shall order the defendant to pay . . . [¶] (B) Restitution to the victim or victims, if any, in accordance with subdivision (f), which shall be enforceable as if the order were a civil judgment."

Section 1202.4, 2ubdivision (f) provides, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record." A corporation

8

may be a direct victim of a crime. (§ 1202.4, subd. (k)(2).) Accordingly, the trial court entered a restitution order for $2,200.

The defendant "has the right to a hearing before a judge to dispute the determination of the amount of restitution. The court may modify the amount, on its own motion or on the motion of the district attorney, the victim or victims, or the defendant. If a motion is made for modification of a restitution order, the victim shall be notified of that motion at least 10 days prior to the proceeding held to decide the motion." (§ 1202.4, subd. (f)(1).)

Because Roosevelt did not object to the restitution order, dispute the amount of restitution, or request a hearing, no arguable issue exists on appeal.


*Section 1170, subdivision (h)(5)*

Section 1170 provides, "(5) The court, when imposing a sentence . . . may commit the defendant to county jail as follows: (A) For a full term in custody as determined in accordance with the applicable sentencing law. (B)(i) For a term as determined in accordance with the applicable sentencing law, but suspend execution of a concluding portion of the term selected in the court's discretion, during which time the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court."

The court did not grant Roosevelt's request for community service or "alternative custody program," even though Roosevelt claimed he was "a primary caregiver" of his children. The court instead recommended Roosevelt "not be subject to any alternative release program, work release, county parole, county probation during the time of his incarceration." The court, however, imposed a split sentence to allow Roosevelt to enroll in residential alcohol or drug treatment after completion of the jail portion of his sentence. The trial court properly exercised its sentencing discretion.

9

Consequently, no arguable issue exists to support an appeal. (See § 1203.016, subd. (e) [at sentencing or at any time that the court deems it necessary, the court may restrict or deny the defendant's participation in a home detention program].)

*Burglary Instructions*

Roosevelt contends the trial court "left out a couple of details" when instructing the jury concerning burglary. The court provided CALCRIM No. 1700, which defined the elements of burglary. That instruction placed the burden on the prosecution to prove defendant entered a commercial building and intended to commit theft when he entered. Roosevelt notes the instruction did not specify "entry" includes entry by "an object under [the defendant's] control." There was no evidence Roosevelt used an object to gain entry, and therefore no issue exists concerning the burglary instructions.

*Conditions of Confinement*

Roosevelt complains he is currently confined in a 22-hour lockdown facility at the Orange County Central Jail, and this deprives him of programs, including school and substance abuse classes. Roosevelt's conditions of confinement are not cognizable on appeal from the judgment of conviction.

*Abuse of Sentencing Discretion*

Roosevelt argues the trial court abused its discretion by imposing the maximum sentence, running his sentence consecutively, and depriving him of work release programs, split sentencing, and home confinement. The record supports the trial court's stated reasons for its sentencing choices. Accordingly, no basis exists to support an appeal regarding the sentence.

10

*Drug Program*

Roosevelt also contends he should be placed in the Delancey Street drug program for the remainder of his custody time. As noted, the court did split Roosevelt's sentence to allow him to enroll in a program at the end of his custody time.

*Sandoval's Testimony*

Roosevelt complains the trial court failed to act impartially by allowing the prosecutor to commit misconduct by whispering in witness Sandoval's ear to influence his testimony. Sandoval was the loss prevention specialist at the Huntington Beach Albertson's store who confronted Roosevelt in the employee-only area on April 29. Before trial, the court granted the defense's motion to exclude references to bulletins generated by Albertson's concerning theft incidents in Orange, Riverside, and San Bernardino Counties unrelated to the charged incidents. Defense counsel expressed concern that Albertson's employees had stated the person in the videos looked "like somebody from another video in another Albertsons in another county." The prosecutor stated she would discuss the matter with her witnesses. We have reviewed Sandoval's testimony. Defense counsel did not object to any whispering. At one point, the prosecutor apparently approached Sandoval after Sandoval testified he "immediately recognized the subject [Roosevelt]." It is likely the prosecutor advised Sandoval about the court's pretrial ruling not to mention he recognized Roosevelt from the bulletins or other information obtained from the uncharged incidents. The record does not demonstrate the court or prosecutor acted improperly to influence Sandoval's testimony. We perceive no arguable issue.

11

*Juror Impartiality*

Roosevelt complains one of the jurors worked for Albertson's or for a company that represents union members who worked for the store. Our record does not contain a transcript of the jury voir dire. The court's minutes do not reflect an objection to any juror on this basis however. We discern no arguable issue.

*Ineffective Assistance by Trial Counsel*

Roosevelt argues trial counsel rendered ineffective assistance by failing to adequately investigate the case and interview key witnesses, to request a lineup, to request a lesser charge, and to investigate or present a mental state defense based on voluntary intoxication. He also complains trial counsel's body language displayed "racial prejudice, bias, and unprofessional[ism]" before trial and during trial, he did not feel counsel acted in his best interests, she wanted him to take a deal because she said he was going to lose at trial, and she did not present any defense at trial. He also complains counsel failed to object to the prosecutor's misconduct with Sandoval. Nothing in the appellate record supports the charges leveled at trial counsel. We perceive no grounds to argue trial counsel provided ineffective representation. (See *Strickland v. Washington* (1984) 466 U.S. 668.)

*Trial Judge Bias*

Roosevelt contends the trial judge was biased against him and his family, and denied him a constitutionally fair trial. He cites the court's minutes from November 19, 2012, that reflect the court "held [a] hearing regarding the children of the defendant sleeping in the courtroom." He also complains about the judge's body language and states the court "said and [did] a lot of wrongful things off record." He states the judge told the prosecutor "how to convict[]" him and word things for the jury, although "[m]ost of this misconduct took place off record." He says the trial judge "denied everything [he]

12

requested" because Roosevelt wanted a trial, and gave him the maximum sentence. Nothing in the appellate record supports Roosevelt's complaints the trial court was biased against him. These baseless charges present no arguable issue.

*Notice of Charges*

Roosevelt states he was deprived of the right "to know what [he was] actually charge[d] with." The clerk's transcript contains the complaint, preliminary hearing transcript, and the information. The record shows Roosevelt had knowledge of the charges against him.

*Sufficiency of the Evidence*

Roosevelt challenges the sufficiency of the evidence to support the judgment, and emphasizes he was not arrested at any of the stores he was charged with burglarizing, he had no contact with the loss prevention officers who testified, he was not identified from a physical lineup, photo lineup, or show up, and police officers who saw the surveillance video and testified at the preliminary hearing described the "subject as a different race, height, weight, and wearing different clothing." We have summarized the evidence above, which supports the jury's guilty verdicts. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319; *People v. Johnson* (1980) 26 Cal.3d 557, 576-578.)

*Officer Krogman's Testimony*

Roosevelt states Detective Krogman "lied to [the] court" when he testified Roosevelt admitted he was depicted in the Albertson's photos and stated he worked for Albertson's. We have recounted Krogman's testimony above. Roosevelt refers to Krogman's alleged statements during the interview that are not contained in the appellate record. We decline Roosevelt's invitation to listen to the audiotape that was not received into evidence. Nothing in the record supports Roosevelt's claim.

13

*Prosecutor's Closing Argument*

Roosevelt complains the prosecutor committed misconduct by making factual arguments concerning the crimes that were not supported by the evidence and impermissibly giving her personal opinions. He also objects the prosecutor described him as acting like a "professional thief," and complains the loss prevention officer and prosecutor engaged in racial profiling. We have reviewed the surveillance video and the portions of the reporter's transcript Roosevelt cites, and discern no arguable issue concerning any misstatement or misconduct by the prosecutor. Nor do we discern any racial profiling, or "coercion" of prosecution witnesses.

*Vehicle Search*

Roosevelt complains the police had no probable cause and violated the Fourth Amendment by approaching his wife, who was sleeping in a vehicle in a CVS parking lot, and searching the car to find 33 bottles of unopened liquor. This apparently relates to events of May 24, 2012, in Seal Beach. Evidence relating to this incident was not admitted at Roosevelt's trial. We discern no arguable issue that police violated Roosevelt's Fourth Amendment rights.

Other than the apparent miscalculation of credits, we discern no arguable issues from counsel's brief, Roosevelt's letter briefs, or in our independent review of the record.

DISPOSITION

The judgment is modified (§ 1260) to reflect defendant served 115 days in actual custody before sentencing and earned 115 days of conduct credit, for a total presentence credit of 230 days. The trial court is directed to prepare an amended abstract

14

of judgment and forward it to the appropriate authorities.  In all other respects, the judgment is affirmed.


                                                        ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


IKOLA, J.